IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY SUE MOORE,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>　　　　Defendant.<br>_____ | Case No.: 1:10-cv-01826 JLT<br><br>ORDER DIRECTING THE ENTRY OF<br>JUDGMENT IN FAVOR OF DEFENDANT<br>MICHAEL J. ASTRUE, COMMISSIONER OF<br>SOCIAL SECURITY, AND AGAINST<br>PLAINTIFF KIMBERLY SUE MOORE |

Kimberly Moore ("Plaintiff") asserts she is entitled to supplemental security income under Title XVI of the Social Security Act. Plaintiff argues the administrative law judge ("ALJ") erred in his evaluation of the opinion of a non-examining opinion. In addition, Plaintiff asserts the ALJ failed to provide clear and convincing reasons for finding her subjective complaints were not credible. Therefore, Plaintiff seeks judicial review of the administrative decision denying her claim for benefits. For the reasons set forth below, the administrate decision is **AFFIRMED**.

**PROCEDURAL HISTORY**[1]

Plaintiff filed an application for supplemental security income on August 28, 2007, alleging disability beginning April 1, 1985. AR at 113-14. The Social Security Administration denied these claims initially and upon reconsideration. *Id.* at 36-55. Plaintiff requested a hearing, which was held

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

before an ALJ on January 26, 2010. *Id.* at 20. The ALJ determined Plaintiff was not disabled as defined by the Social Security Act, and issued an order denying benefits on February 4, 2010. AR at 10-19. Plaintiff requested review of the decision by the Appeals Council of Social Security on the ALJ's decision, which was denied on August 13, 2010. *Id.* at 1-4. Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security ("Commissioner").

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938). The record as a whole must be considered, as "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under Title XVI of the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). When a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## DETERMINATION OF DISABILITY

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f) (2010). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* In making these determinations, the ALJ must consider objective medical evidence and opinion (hearing) testimony. 20 C.F.R. §§ 416.927, 416.929.

A.  Relevant Medical Evidence

Plaintiff received treatment at Sequoia Family Medical Center for back pain caused by scoliosis and various health issues such as coughs and congestion. *See e.g.,* AR at 178, 181, 206-09, 217. In January 2007, Plaintiff reported her back pain was worse. *Id.* at 181. In February 2007, Plaintiff reported the "pain is better." *Id.* at 209. Plaintiff continued to be evaluated periodically for back pain through 2008. *See, e.g., id.* at 206, 219.

On January 18, 2008, Plaintiff had x-rays taken of her lumbosacral spine. AR at 189, 195. Dr. Daniel Hightower found Plaintiff had "moderate convex left rotatory scoliosis lumbar spine measuring 25 degrees. *Id.* Further, Dr. Hightower opined Plaintiff had "mild degenerative disk disease" and found that "associated end plate degenerative changes are suggested at the thoracolumbar region." *Id.*

Dr. Rosalinda Serrano performed a comprehensive orthopedic evaluation of Plaintiff on January 20, 2008. AR at 190-94. Plaintiff reported she had "ongoing back pain," which increased with prolonged sitting and standing. *Id.* at 190. Dr. Serrano observed Plaintiff "was slightly limping

favoring the lift side," but did not use an assistive device. *Id.* at 191. On examination, Dr. Serrano noted Plaintiff had no paraspinal muscle pain or tenderness in her cervical spine, but had pain and tenderness on the thoracolumbar spine. *Id.* at 192. Plaintiff's muscle strength was weaker (4+/5) in her lower extremities, and as a result Dr. Serrano believed Plaintiff was limited to standing or walking for four to six hours in an eight-hour day. *Id.* at 193. In addition, Dr. Serrano opined Plaintiff had the ability to sit for six hours in an eight-hour day, lift and carry ten pounds frequently and 20 pounds occasionally, and had occasional postural limitations due to her scoliosis. *Id.*

On February 27, 2008, Dr. Elpidio Fonte completed a physical residual functional capacity assessment, and noted Plaintiff had scoliosis and mild degenerative disc disease. AR at 196-200. Dr. Fonte determined Plaintiff had the ability to occasionally lift and carry twenty pounds and ten pounds; stand, sit, or walk for about six hours in an eight-hour day. *Id.* at 197. He found Plaintiff was limited in her ability to reach, but had no further manipulative limitations. *Id.* at 197-98. Dr. Fonte opined Plaintiff's scoliosis and mild degenerative disc disease limited her ability to balance and climb ropes and stairs, but she could occasionally stoop, kneel, crouch; crawl; and climb ladders, ropes, and scaffolds. *Id.* at 198. Further, Dr. Fonte concluded Plaintiff was limited to occasional stooping, kneeling, crouching, and crawling. *Id.* Dr. Fonte determined Plaintiff's complaints were "not entirely consistent with clinical findings" because she took only over-the-counter medication, had "pretty good motor strength and she doesn't need or use an assistive device." *Id.* at 202.

Plaintiff had images taken of her thoracolumbar spine on April 14, 2008. AR at 205. The images showed a "dextroscoliotic curve of the thoracic spine" and a "levoscoliotic curve of the lumbosacral spine," which each had a 27-degree angle at the apex. *Id.* Dr. Gregory Mellor observed no change when he compared the results to the previous results from December 12, 2006. *Id.*

Dr. Roger Izzi performed a comprehensive psychological evaluation on June 17, 2008. AR at 232-36. Plaintiff reported she had problems with eating habits and her appetite, sleeping, and crying spells. *Id.* at 232. In addition, Plaintiff said she had auditory hallucinations three times a week and had used methamphetamine from 1992 to 2003. *Id.* at 233. According to Plaintiff, she was not seeing a mental health professional for treatment. *Id.* Dr. Izzi administered psychological tests, including: Wechsler Adult Intelligence Scale-III ("WAIS-III"), Bender-Gestalt Test-II, and Wechsler

1  Memory Scale-III ("WMS-III"). *Id.* Dr. Izzi found Plaintiff's verbal IQ was 74, her performance IQ
2  was 77, and her full scale IQ was 74. *Id.* As a result, Dr. Izzi concluded Plaintiff's intellectual
3  functioning was within the Borderline Range. *Id.* With the results from the WMS-III, Dr. Izzi
4  determined Plaintiff was in the "extremely low range" with her memory, which "may limit [her]
5  ability to perform a complex task on a consistent basis over an eight-hour period." *Id.* at 234-36.
6  Based upon the testing, Dr. Izzi found that Plaintiff appeared to be "capable of performing a simple
7  and repetitive type task on a consistent basis over an eight-hour period." *Id.* at 235. Further, Dr. Izzi
8  opined, Plaintiff's "ability to get along with peers or be supervised in a work-like setting is not
9  impaired . . . On a purely psychological basis, [Plaintiff] appears capable of responding to usual work
10 session situations regarding attendance, safety issues, as well as in dealing with changes in a routine
11 work setting." *Id.*

12 On July 31, 2008, Dr. G.W. Bugg reviewed Plaintiff's medical records and noted Plaintiff
13 had borderline intellectual functioning and a depressive disorder, not otherwise specified. AR at
14 174-76. Dr. Bugg concluded Plaintiff was capable of simple, repetitive tasks. *Id.* at 175. In
15 addition, he affirmed the findings of Dr. Serrano and Dr. Fonte. *Id.*

16 Dr. Cory Brown completed a mental residual functional capacity assessment and psychiatric
17 review technique form on August 12, 2008. AR at 238-51. Dr. Brown believed Plaintiff had
18 affective disorders and mental retardation. *Id.* at 241. According to Dr. Brown, Plaintiff was
19 "moderately limited" in the following abilities: to understand, remember, and carry out detailed
20 instructions; to maintain attention and concentration for extended periods; to respond appropriately
21 to changes in the work setting; and to set realistic goals or make plans independently of others. *Id.* at
22 238-39. Plaintiff had mild limitations in her activities of daily living. *Id.* at 249. Dr. Brown opined
23 Plaintiff was "not significantly limited" in all other areas of understanding and memory,
24 concentration, persistence, social interaction, and adaptation. *Id.* Therefore, Dr. Brown concluded
25 Plaintiff was "[a]ble to understand and remember . . . procedures of a simple, routine nature" and
26 "[a]ble to maintain concentration and attention for above 2 hour increments." *Id.* at 240. Further,
27 Dr. Brown found Plaintiff was "able to sustain 8 hr/40 hr work schedules on a sustained basis with
28 simple tasks but not with complex tasks." *Id.* Dr. Brown "adopted" the medical source statement of

Dr. Izzi, and noted Plaintiff had significant limitations with concentration, persistence and pace, "mostly with complex" tasks. *Id.* at 251.

On January 28, 2009, Plaintiff had an evaluation of her scoliosis at Sequoia Family Medical Center. AR at 254. Dr. Mellor compared images taken of Plaintiff's thoracolumbar spine to those taken on April 14, 2008, and found "[n]o interval change." *Id.* at 253.

On January 14, 2010, Dr. Mellor found Plaintiff's "vertebral body heights and alignment are normal," but she had "decreased intervertebral disc space" at the C5-6 level. AR at 266. In addition, Plaintiff had a "[m]ild osteoarthritic change" in her cervical spine. *Id.*

B. Hearing Testimony

Plaintiff testified at hearing before the ALJ on January 26, 2010, at which time she was 38 years old. AR at 22. Plaintiff reported that she had completed the twelfth grade, and "was in special day classes all through school." *Id.* She stated that she had difficult reading and writing, but could read "simple things." *Id.* at 22-23. Plaintiff said she had never worked for pay. *Id.* at 23.

Plaintiff stated she had scoliosis and wore a back brace for three years as a child. AR at 24. She reported she still had pain "[i]n the lumbar part and the upper part" of her back and could not get out of bed three to four days a week due to the pain. *Id.* at 24, 28. Plaintiff confirmed she was on medication, but believed it did not help with the pain. *Id.* at 24-25. According to Plaintiff, the pain felt like someone poked her, and nothing provided relief though she tried heating pads. *Id.* at 26.

In addition, Plaintiff reported she suffered from depression. AR. At 25. Plaintiff said depression made her feel "[l]ike I don't want to be here." *Id.* She stated her energy was "[n]ot good." *Id.* Plaintiff confirmed she had difficulty with concentration, and estimated she could concentrate for ten minutes. *Id.* at 26.

Plaintiff estimated she could lift and carry "[m]aybe five pounds if even that." AR at 27. Plaintiff believed she could sit about twenty minutes before she needed to stand and walk "about two blocks." If she had an option to sit or stand Plaintiff believed she could stand about three hours in an eight-hour day, and sit two hours total. *Id.* She stated that she took rest breaks three times a day to lie down for thirty minutes. *Id.* Plaintiff reported that she was able to take care of her personal needs, though sometimes her daughter put on her shoes and socks because it hurt to bend. *Id.* at 29.

She testified that on a normal day she tried to clean her house, but friends did her yard work. AR at 29. In addition, she did beading until her fingers went numb after about fifteen minutes, which happened every day. *Id.* at 30. Plaintiff said her hands started to tingle and turn red, and she had a doctor appointment scheduled after the hearing to see a nerve specialist. *Id.* at 30-31.

Vocational expert ("VE") Jose Chaparro testified that Plaintiff did not have past work activity. AR at 32. The ALJ asked the VE to consider a "38-year-old individual with a twelfth-grade education and no past relevant work experience." *Id.* In addition, the individual had the ability to lift and carry twenty pounds occasionally and ten pounds frequently; stand, walk and sit six hours each; occasionally climb ropes, ladders and scaffolds; and occasionally stoop, kneel, crouch, crawl, and reach. *Id.* at 33. Further, the individual was required to "avoid walking on uneven terrain and exposure to unprotected heights." *Id.* With regard to the individual's mental abilities, the ALJ stated the person had "the ability to perform simple, repetitive tasks as well as maintain attention, concentration, persistence and pace," and was able to "relate or interact with others . . ., to adapt to usual changes in work settings; and . . . adhere to safety rules." *Id.* Given these limitations, the VE opined such an individual would be able to perform work in the national economy, such as apple packing, cafeteria attendant, and automatic car wash attendant. *Id.* These positions were described as "light and unskilled" work by the DOT.[2] *Id.*

Second, the VE considered an individual who had the ability to lift and carry a maximum of five pounds, grip items for more than ten to fifteen minutes, could stand for three hours total, sit for two hours total, and walk for two blocks. AR at 24. The individual required "two or three rest breaks per day, lasting approximately 30 minutes each." *Id.* Also, the individual had difficulty maintaining concentration, focus, persistence, and pace. *Id.* The VE concluded such an individual would not be able to perform any work in the national economy. *Id.*

Plaintiff's counsel asked the VE to consider "a person of the same age, education and work experience of the claimant" who was "moderately limited" in the following abilities: to understand,

---

[2] The *Dictionary of Occupational Titles* ("DOT") by the United States Dept. of Labor, Employment & Training Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national economy. *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). The DOT classifies jobs by their exertional and skill requirements, and may be a primary source of information for the ALJ or Commissioner. 20 C.F.R. § 404.1566(d)(1).

remember, and carry out detailed instructions; to maintain attention and concentration for extended periods; to respond appropriately to changes in the work setting; and to set realistic goals or make plans independently of others. AR at 34. The VE opined such a person was unable to perform work in the national economy. *Id.* at 34-35. Likewise, the VE concluded there was not work in the national economy if the individual had "moderate difficulties in maintaining concentration, persistence or pace." *Id.* at 35.

C.   The ALJ's Findings

Pursuant to the five-step process, the ALJ determined Plaintiff had not engaged in substantial gainful activity since the application date of August 18, 2007. AR at 12. Second, the ALJ found Plaintiff has the following severe impairments: obesity, scoliosis, and borderline intellectual functioning. *Id.* These impairments did not meet or medically equal a listed impairment. *Id.* The ALJ considered "the entire record" to determine Plaintiff's residual functional capacity ("RFC") and concluded Plaintiff had the following RFC:

> [T]o lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours in an 8-hour work day and sit 6 hours in an 8-hour work day. She can occasionally climb ropes, ladders and scaffolds; she can occasionally stoop, kneel, crouch, crawl and reach overhead. She must avoid walking on uneven terrain and must avoid exposure to unprotected heights.

*Id.* With regard to her mental abilities, the ALJ found Plaintiff "can perform simple, repetitive tasks, and can maintain attention, concentration, persistence, and pace." *Id.* Further, the ALJ concluded Plaintiff was able to "relate to and interact with others, adapt to changes in work settings, and adhere to safety rules." *Id.* With this RFC, the ALJ determined Plaintiff was capable of performing work existing in significant numbers in the national economy. *Id.* at 18. Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. *Id.*

**DISCUSSION AND ANALYSIS**

Plaintiff asserts the ALJ adopted limitations identified by the State Agency physician, Dr. Brown, who determined Plaintiff was moderately limited in the following areas: (1) ability to understand and remember detailed instructions, (2) ability to carry out detailed instructions, (3) ability to maintain attention and concentration for extended periods, (4) ability to respond appropriately to changes in the work setting, (5) ability to set realistic goals or make plans

8

independently of others. (Doc. 15 at 6-7). In addition, Dr. Brown found Plaintiff had "moderate" difficulties with maintaining concentration, persistence, or pace. *Id.* at 7. According to Plaintiff, "The ALJ mentions the above limitations . . . and gives no reason at all to discount them or reject them." *Id.* Therefore, Plaintiff asserts the ALJ was required to accept the VE testimony that an individual with these limitations was not capable of performing work in the national economy. *Id.* at 8. Further, Plaintiff asserts the ALJ erred in failing to find her testimony credible.

A.   Substantial evidence supports the RFC that Plaintiff can perform "simple, repetitive tasks".

In this circuit, cases distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Generally, the opinion of a treating physician is afforded the greatest weight in disability cases, but it is not binding on an ALJ in determining the existence of an impairment or on the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Also, an examining physician's opinion is given more weight than the opinion of a non-examining physician. 20 C.F.R. § 404.1527(d)(2). Thus, the opinion of Dr. Izzi, examining physician, should be afforded the greatest weight because there is not an opinion offered by a treating physician regarding Plaintiff's mental abilities.

As noted by the ALJ, Dr. Izzi found Plaintiff was "capable of performing a simple and repetitive type tasks on a consistent basis over an 8-hour period." AR at 16. Importantly, Dr. Izzi's opinion was based upon independent clinical findings and the results of objective medical testing including WAIS-III, Bender-Gestalt Test-II, and WMS-III. The opinion of an examining physician may be substantial evidence when the conclusions were based upon (1) diagnoses differing from those offered by a treating physician and that are supported by substantial evidence or (2) findings based on objective medical tests. *See Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Therefore, Dr. Izzi's conclusion that Plaintiff was able to perform "simple and repetitive type" tasks is substantial evidence supporting of the RFC.

The opinion of an examining physician may be substantial evidence when consistent with other evidence in the record. *Tonapetyan*, 242 F.3d at 1149. Here, though Dr. Brown determined Plaintiff had several moderate limitations,[3] he also concluded Plaintiff was "not significantly limited" in several areas of understanding and memory, concentration, persistence, social interaction, and adaptation. AR at 16-17, 238-39. As a result, Dr. Brown concluded Plaintiff was "[a]ble to understand and remember . . . procedures of a simple, routine nature" and "able to sustain 8 hr/40 hr work schedules on a sustained basis with simple tasks but not with complex tasks." *Id.* at 240. In addition, Dr. Bugg reviewed the medical records and determined Plaintiff had the ability to perform simple, repetitive tasks. AR at 16, 175. The conclusions of Dr. Bugg and Dr. Brown were consistent with Dr. Izzi's conclusion that Plaintiff could perform simple and repetitive tasks. As noted by the ALJ, Dr. Brown "adopted" the opinion of Dr. Izzi that Plaintiff could perform simple and repetitive tasks. Therefore, the opinion of Dr. Brown that Plaintiff could perform "simple tasks" and remember "procedures of a simple, routine nature" is substantial evidence supporting the RFC, as is Dr. Bugg's opinion that Plaintiff could perform "simple, repetitive tasks."

Furthermore, the restriction to "simple, repetitive tasks" incorporates moderate limitations in several areas of cognitive functioning. *See, e.g., Sabin v. Astrue*, 337 Fed. Appx. 617, 621 (9th Cir. 2009) ("the ALJ determined the end result of the plaintiff's moderate difficulties as to concentration, persistence, or pace was that she could do simple and repetitive tasks"); *Ceballos v. Astrue*, 2011 U.S. Dist. LEXIS 97107 at *25-26 (ED Cal. Aug. 30, 2011) (opinion of physician that the claimant suffered moderate limitations in ability to understand, remember, and carry out detailed instructions was substantial evidence supporting the ALJ's conclusion that the Plaintiff should be limited to performing "simple routine, repetitive work"). Consequently, the ALJ's limitation to "simple, repetitive tasks" was consistent with the limitations set forth by Dr. Izzi, Dr. Brown, and Dr. Bugg, and is supported by substantial evidence in the record.

///

---

[3] Though Plaintiff asserts the ALJ did not address these limitations, the ALJ noted that Dr. Brown "indicate[d] moderate limitation in ability to understand, remember and carry out detailed instructions, in ability to maintain attention and concentration for extended periods, ability to respond appropriately to changes in the work setting, and in the ability to set realistic goals or make plans independently of others." AR at 16-17.

B.  The vocational expert's testimony supports the ALJ's conclusion that Plaintiff was not disabled.

The Commissioner can establish that there is work in "significant numbers" in the national economy through VE testimony or based upon the Medical-Vocational Guidelines. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). An ALJ may call a VE "to testify as to (1) what jobs the claimant, given his or her functional capacity, would be able to do; and (2) the availability of such jobs in the national economy." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999), 62 Soc. Sec. Rep. Service 607. Here, because Plaintiff did not have the capacity to perform the full range of light work under the Medical-Vocational Guidelines, the ALJ sought testimony from the VE "[t]o determine the extent to which [Plaintiff's] limitations erode the unskilled light occupational base." AR at 18. This is consistent with Social Security Ruling ("SSR") 83-12, which requires an adjudicator to consult a vocational resource when "the extent of erosion of the occupational base is not clear." *Id.*

The ALJ may pose "hypothetical questions to the vocational expert that 'set out all of the claimant's impairments' for the vocational expert's consideration" when eliciting testimony. *Tackett*, 180 F.3d at 1101, quoting *Gamer v. Sec'y of Health and Human Servs.*, 815 F.2d 1275, 1279 (9th Cir. 1987). The description of impairments "must be accurate, detailed, and supported by the medical record." *Id.* Only limitations supported by substantial evidence must be included in the question. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006); *Osenbrock*, 240 F.3d at 1163-65. "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that the claimant has a residual working capacity has no evidentiary value." *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). When the "weight of the medical evidence supports the hypothetical questions posed by the ALJ," the ALJ's findings will be upheld by the court. *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *see also Gallant*, 753 F.2d at 1456.

In this case, the ALJ determined Plaintiff was limited to "simple, repetitive tasks," and set forth a hypothetical to the VE incorporating this limitation. *See* AR at 33. This limitation was supported by substantial evidence in the medical record, as addressed above. The VE opined that an individual with the physical impairments identified by the ALJ who was limited to "simple, repetitive tasks" was able to perform work in the national economy, such as an apple packer,

cafeteria attendant, and automatic car wash attendant.  Thus, the VE's testimony is evidence in support of the ALJ's decision that Plaintiff is not disabled.  *See Tackett*, 180 F.3d at 1101.

C.  The ALJ set forth clear and convincing reasons for rejecting Plaintiff's credibility.

In determining credibility, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007), quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991).  An adverse finding of credibility must be based on clear and convincing reasons where there is no affirmative evidence of a claimant's malingering and "the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008).  Here, the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR at 17.  However, the ALJ determined Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible…" *Id.*  Plaintiff rejects this finding and asserts that the ALJ did "not give clear and convincing reasons to reject [her] allegation of subjectively disabling symptoms.  (Doc. 15 at 9-10).

Factors that an ALJ may consider in a credibility determination include: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct, (3) the claimant's daily activities, (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment and (5) testimony of physicians concerning the nature, severity, and effect of the symptoms. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v Barnhart*, 287 F.3d 947, 958-59 (9th Cir. 2002).  In this case, the ALJ reviewed Plaintiff's daily activities, which included taking her daughter to school, cooking, cleaning, shopping, and doing laundry.  AR at 15.  Plaintiff reported she was able to pay the bills and handle money.  *Id.*  Further, the ALJ noted, "Some of her activities involve things that some people do in the course of their jobs." *Id.* 17.  Plaintiff's daily activities were a valid consideration as part of the credibility determination.  *See Fair*, 885 F.2d at 603; *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (the ALJ considered the claimant's ability to clean, cook, and do laundry

because the "activities tend to suggest the claimant may still be capable of performing the basic demands of … work on a sustained basis"); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (the claimant's activities "suggest she is quite functional. She is able to care for her own personal needs, cook, clean and shop. She interacts with her nephew and boyfriend. She is able to manage her own finances").

In addition, the ALJ considered the objective medical evidence. *See* AR at 15-16. As a general rule, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute "specific and substantial reasons that undermine . . . credibility." *Morgan v. Comm'r of the Soc. Sec. Admin*, 169 F.3d 595, 600 (9th Cir. 1999). The Ninth Circuit stated, "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis"); SSR 96-7p, 1996 SSR LEXIS 4, at *2-3 (the ALJ "must consider the entire case record, including the objective medical evidence" in determining credibility, but statements "may not be disregarded solely because they are not substantiated by objective medical evidence"). Here, the ALJ did not base the credibility determination solely on the fact that the medical record did not support the degree of symptoms alleged by Plaintiff. Thus, the objective medical evidence was a relevant factor in determining Plaintiff's credibility.

Therefore, the ALJ set forth clear and convincing reasons for rejecting Plaintiff's credibility, and met his burden to state findings "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

## **CONCLUSION**

For all these reasons, the Court concludes the ALJ determined properly that Plaintiff was not disabled as defined by the Social Security Act. Though Plaintiff argues the evidence supports a finding that Plaintiff is disabled, the evidence demonstrated Plaintiff could perform simple, repetitive

tasks as set forth in the RFC. The vocational expert's testimony provided evidence that individual with the same abilities and limitations as those determined by the ALJ could perform work in the national economy. Consequently, the ALJ's conclusion that Plaintiff is not disabled must be upheld by the Court because the ALJ applied proper standards, and the findings are supported by substantial evidence. *Sanchez*, 812 F.2d at 510.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is **DENIED**; and

2. The Clerk of Court IS DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Kimberly Sue Moore.

IT IS SO ORDERED.

Dated:  **September 20, 2011**                         **/s/ Jennifer L. Thurston**
                                                       UNITED STATES MAGISTRATE JUDGE